IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE L. NAIL, | ) | CASE NO. 4:16 CV 1302 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Michelle L. Nail, for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under the initial order[5] the parties have briefed their positions.[6]

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated October 3, 2016.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

[6] ECF # 13 (Nail's brief), ECF #18(Commissioner's brief), ECF # 22 (Nail's reply brief).

and filed supplemental charts[7] and fact sheet.[8] They have participated in a telephonic oral argument.[9]

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Nail who was fifty years old at the time of the administrative hearing,[10] has an eighth grade education.[11] She is divorced and lives with her mother who assists her financially.[12] Her past relevant employment history includes work as a home health aide.[13]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Nail had severe impairments consisting of depression, posttraumatic stress disorder (PTSD); and degenerative disc disease (20 CFR 416.920©).[14] The ALJ made the following finding regarding Nail's residual functional capacity:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can engage in no more than occasional overhead reaching or lifting. She can never balance, crawl or climb ladders, scaffolds, etc. The claimant can occasionally climb ramps or stairs, stoop, kneel, or crouch. She can never be exposed to workplace hazards such as unprotected heights or dangerous machinery. The claimant is limited to

---

[7] ECF # 18-(Commissioner's charts); ECF # 22-1 at 3(Nail's charts).

[8] ECF # 22-1 at 1.

[9] ECF # 23.

[10] ECF # 11, Transcript ("Tr.") at 51.

[11] *Id.*

[12] *Id.* at 247.

[13] *Id.* at 39.

[14] *Id.* at 31.

jobs involving simple, repetitive tasks using routine work processes in routine work settings; no high production quotas or strict quality production standards; no teamwork; and no public interaction on the job.[15]

Given that residual functional capacity, the ALJ found Nail incapable of performing her past relevant work as a home health aide.[16] Applying the medical-vocational grids in Appendix 2 of the regulations, the ALJ found Nail not under a disability.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Nail could perform.[18] The ALJ, therefore, found Nail not under a disability.

Nail asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically Nail presents the following issues for judicial review:

- Whether the ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating psychiatrist.

- Whether the ALJ erred by failing to address whether plaintiff's disability met listings 12.04 and 12.06.

- Whether the ALJ posed a faulty hypothetical question to the vocational expert.

---

[15] *Id.* at 33.

[16] *Id.* at 39.

[17] *Id.* at 40.

[18] *Id.*

- Whether the ALJ lacked the proper basis for his residual functional capacity assessment.[19]

The Court recommends that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, should be reversed and remanded for further administrative proceedings.

## Analysis

**A.     Applicable legal principles**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

---

[19] ECF # 13 at 4.

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

*2.     The treating source rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

---

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on

---

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09 CV 981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

---

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.    Recommendation**

Although Nail presents four issues for judicial review, this case essentially presents two questions:

(1) did the ALJ appropriately assign only little weight to the opinion of functional opinion of Dr. William Price, M.D., Nail's treating psychiatrist, while giving great weight to the opinions of two state agency reviewing psychologists; and

(2) does substantial evidence support the finding of the ALJ that Nail does not meet Listings 12.04 and 12.06?

*1.    Medical opinions*

As will be discussed below, I will recommend finding that the ALJ erred in handling the functional opinions of the named sources, and that the matter be remanded so that the question of meeting the listings may be re-examined by the ALJ in light of a reconsideration of the medical opinion evidence.

---

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

Dr. Price had been Nail's treating psychiatrist since June 2009[71] with 13 recorded treatment visits[72] over a span of nearly four years[73] before he submitted a written medical statement concerning Nail in March 2013.[74] In that statement[75] Dr. Price did not opine as to various work-related limitations specified in the form, but did affirmatively state that Nail was markedly impaired in three psychiatric domains[76] and extremely impaired in the domain of being able to maintain attention and concentration.[77] He also diagnosed Nail with "IBD;[78]

---

[71] Tr. at 699.

[72] *Id*. at 411, 412, 414, 416, 418, 420, 428, 430, 434, 439, 441, 443, 701.

[73] It should be noted that Nail continued her treatment relationship with Dr. Price for more than a year after the 2013 date on which Dr. Price submitted his medical opinion in this case. See, *id*. at 703 (10/10/13), 705 (11/21/13),

[74] *Id.* at 610.

[75] *Id*.

[76] (1) the ability to understand, remember and carry out detailed instructions; (2) the ability to work with others; and (3) the ability to interact appropriately with the general public.

[77] Listings 12.04 and 12.06 share the same paragraph B criteria whereby a claimant must show his disorder results in at least marked restrictions in at least two of the three following limitations: (1) activities of daily living; (2) difficulties in social functioning; (3) difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation. The paragraph C criteria for both listings requires that the claimant show repeated episodes of decompensation, each of extensive duration. *Bowman v. Commissioner*, No. 16-6298, 2017 WL 1065553, at * 4 (6th Cir. March 21, 2017).

[78] Inflammatory Bowel Disease.

Major Depression Recurrent (severe) and Bipolar Type I (Depressed), panic disorder."[79] He further noted that Nail "suffers from treatment resistant disorder."[80]

The two state agency reviewing sources provided opinions in July 2012[81] and February 2013,[82] or before Dr. Price had submitted his diagnosis and opinion. Neither state agency reviewer found that Nail had any marked or extreme impairments, but rather concluded that any impairments were mild to moderate,[83] although Dr. Tischler further opined that Nail was precluded from working as a member of a team and should have no interaction with the general public.[84]

For his part, the ALJ gave Dr. Price's opinion only little weight.[85] While acknowledging Dr. Price as a treating source, the ALJ explained the minimal weight given to Dr. Price's opinion in a short statement that noted that Dr. Price's opinion "was not consistent with the evidence of record, which does not include psychiatric evaluations showing marked or extreme limitations."[86] By contrast, the ALJ gave great weight to the

---

[79] Tr. at 610.

[80] *Id.*

[81] *Id.* at 142-43 (Carl Tishler, Ph.D.).

[82] *Id.* at 155-56 (Caroline Lewin, Ph.D.).

[83] *Id.* at 143 (Tischler); 156 (Lewin).

[84] *Id.* at 145.

[85] *Id.* at 38.

[86] *Id.*

opinions of state agency reviewers Tischler and Lewin.[87] The ALJ's sole stated reason for preferring the opinions of these reviewing sources over the later opinion of Dr. Price, a treating source, is that "[t]he state agency psychologists reviewed all the evidence of record, thus they enjoyed a more comprehensive perspective than that available to treating or examining sources."[88]

While the Commissioner's regulations allow for an ALJ to give greater weight to the opinion of a source restricted to record review over the opinion of a treating source, that decision must be clearly explained by good reasons.[89] And while it possible for an ALJ to give greater weight to the opinion of non-examining sources over that of a treating source even when the non-examining opinion was rendered prior to that of the treating source, a reviewing court must be able to see in the ALJ's decision some indication that the ALJ addressed the fact that the non-examining source opinion was based on a less than complete case record and yet still warrants greater weight.[90] Where the record does not provide good reasons for the giving of lesser weight to the opinion of a treating source and the violation is more than *de minimus*, the Sixth Circuit teaches that the matter is to be remanded.[91]

---

[87] *Id*. at 37.

[88] *Id*.

[89] See, *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 379-80 (6th Cir. 2013)(discussing preference for opinion of consulting source over treating source).

[90] *Blakely v. Comm'r of Soc. Sec*., 581 F.3d 399, 409 (6th Cir. 2009).

[91] *Id.* at 409-410.

-16-

Here, there is no indication in the ALJ's opinion that he was conscious of the fact that the opinions of the two records-reviewing sources were issued without the ability to have seen the opinion of the treating source. Indeed, and as noted above, the ALJ gives as his sole reason for preferring the reviewing source opinion the factually incorrect statement that these opinions were based on "all the evidence of record" and were thus supposedly inherently superior to those of the treating source.[92]

Therefore, the decision of the ALJ to downgrade the opinion of Dr. Price and correspondingly to give great weight to the opinions of the two state agency reviewing sources is not supported by substantial evidence and should be reversed.

### 2.  *Listing 12.04 and 12.06*

Step Three of the five-step sequential analysis involves a determination by the ALJ of whether the claimant's match the criteria for a listed disability and so automatically qualify for benefits. Here, the ALJ did address Nail's impairments in light of Listings 12.04 and 12.06.[93] he concluded, largely based on Nail's own reports, that as to the paragraph B criteria she had marked difficulties in social functioning, but only moderate difficulties in daily living, social functioning and with regard to concentration, persistence and pace.[94] At no point in this analysis did the ALJ include a discussion of Dr. Price's findings, although he did reference the findings of a psychological consultative examination where the examiner

---

[92] Tr. at 37.

[93] *Id*. at 32-33.

[94] *Id*.

reported that Nail showed good concentration because she maintained eye contact during the examination and consistently answered the questions posed.[95]

The ALJ's citation to the consultative examination is puzzling. The ALJ described in some detail the results of that examination, but then assigned it no weight. In fact, the ALJ observed that this consultant actually "opined limitations consistent with the inability to work."[96] Again, without attempting to assign weight, the ALJ simply appeared to downgrade that opinion by also noting that the consultant gave Nail a GAF score of 60, which indicated only "borderline mild to moderate functional limitation."[97] The apparently deliberate ambiguity concerning this opinion makes it difficult to perform meaningful judicial review, and certainly raises a question as to whether citation to an unweighed opinion constitutes substantial evidence supporting the finding in the area of concentration, persistence and pace.

Moreover, and most important, the absence of any discussion of Dr. Price's specific limitations in these areas raises a question as to whether these findings would be supported by substantial evidence were Dr. Price's opinions to be considered. Because it is not the province of a reviewing court to conduct that analysis *de novo*, the matter should also be remanded so that the Step Three analysis can be done again in light of whatever findings are made concerning Dr. Price's opinion.

---

[95] *Id*. at 33.

[96] *Id*. at 36.

[97] *Id*.

## Conclusion

Accordingly, and for the reasons stated, I recommend finding that the decision of the Commissioner in this case is not supported by substantial evidence, and so the matter should be remanded for further proceedings consistent with this report and recommendation.

Dated: June 30, 2017                                s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[98]

---

[98] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).